# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PHARAOH OJORE NKOSI,** | : | |
| **Petitioner** | : | |
| | : | **No. 1:21-cv-02166** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **WARDEN FCI-ALLENWOOD LOW,** | : | |
| **Respondent** | : | |

## <u>MEMORANDUM</u>

This habeas corpus action has been brought pursuant to the provisions of 28 U.S.C. § 2241 ("Section 2241") by <u>pro se</u> Petitioner Pharaoh Ojore Nkosi, a/k/a Brian Keith Garries ("Petitioner"), a federal prisoner who is currently incarcerated at Allenwood Low Security Correctional Institution in White Deer, Pennsylvania ("LSCI Allenwood"). (Doc. Nos. 1, 2.) Petitioner claims that he should have been assessed under the United States Parole Commission ("Commission")'s youth guidelines as they existed in 1981 when he committed his underlying offense. (<u>Id.</u>) Petitioner further claims that the Commission's failure to assess him under those guidelines and to, instead, retroactively assess him under the adult guidelines violates the <u>Ex Post Facto</u> Clause of the United States Constitution and constitutes an abuse of discretion. (<u>Id.</u>) The Court, having reviewed Petitioner's claims, as well as the Respondent's response thereto, the record in this matter, and relevant authorities, will deny the petition.

## I.    BACKGROUND

On March 17, 1983, at a United States Air Force General Court-Martial, Petitioner was convicted of premeditated murder in violation of Article 118, Uniform Code of Military Justice. (Doc. No. 12-1 at 4; Doc. No. 2 at 2.) The victim was Petitioner's wife, Airman First Class Camille Garries. <u>See</u> <u>United States v. Garries</u>, 22 M.J. 288, 289 (C.M.A. 1986). Her body was discovered in a ditch located in Colorado Springs, Colorado. <u>See</u> <u>id.</u> She was in the seventh

month of her pregnancy, and her death resulted in the asphyxiation of the fetus.  See id.  As a result of his conviction, Petitioner was sentenced to, among other things, confinement for life and a dishonorable discharge from the Air Force.  See id. at 290; (Doc. No. 12-1 at 4).  Since then, the Air Force Clemency and Parole Board has subsequently reduced Petitioner's life sentence to eighty-nine (89) years.  (Id.)  His projected release date is June 26, 2038.  (Id.)

Although Petitioner was originally confined in military facilities, he was transferred to the custody of the United States Bureau of Prisons ("BOP") on November 2, 1998.  (Id.)  Once Petitioner was transferred to the BOP, the Commission assumed responsibility for considering Petitioner for parole pursuant to 10 U.S.C. § 858(a).  That statute authorizes the transfer of military prisoners, such as Petitioner, to BOP facilities and mandates that they are to be treated the same as non-military prisoners incarcerated in those facilities.  See 10 U.S.C. § 858(a).  More specifically, the statute provides as follows:

> Under such instructions as the Secretary concerned may prescribe, a sentence of confinement adjudged by a court-martial or other military tribunal, whether or not the sentence includes discharge or dismissal, and whether or not the discharge or dismissal has been executed, may be carried into execution by confinement in any place of confinement under the control of any of the armed forces or in any penal or correctional institution under the control of the United States, or which the United States may be allowed to use. Persons so confined in a penal or correctional institution not under the control of one of the armed forces are subject to the same discipline and treatment as persons confined or committed by the courts of the United States or of the State, District of Columbia, or place in which the institution is situated.

See id.  The Commission's Rules and Procedures Manual expands on this statute as follows:

> 2.2-03.  Military Prisoners (10 U.S.C. 858; Uniform Code of Military Justice., Art. 58).

> (a) Prisoners sentenced by military courts-martial and then transferred to a federal institution come under the exclusive jurisdiction of the United States Parole Commission for parole purposes. Military authorities retain jurisdiction for clemency purposes and may reduce the maximum term to be served.

See United States Parole Commission Rules and Procedures Manual ("Commission's Manual"), 2.2.-03, Military Prisoners, https://www.justice.gov/d9/uspc/legacy/2010/08/27/uspc-manual111507.pdf.

After his transfer to BOP custody, the Commission conducted an initial parole hearing in Petitioner's case on February 1, 1999.  (Doc. No. 12-2 at 2.)  Under the federal parole guidelines in effect at the time, each prisoner's crime was classified under one of eight (8) offense severity categories.  See 28 C.F.R. § 2.20 (July 1, 1995).  Category Eight was applied to the most serious offenses, including homicide offenses such as "[m]urder[,] resulting in the death of a person other than a participating offender[.]"  See id.  In addition, each prisoner was assigned a salient factor score.  See id.  The salient factor score "serve[d] as an aid in determining the parole prognosis (potential risk of parole violation)."  See id.  At Petitioner's initial parole hearing, the Commission classified the severity of Petitioner's offense as Category Eight and assigned him a salient factor score of eight (8), which was a "[v]ery [g]ood" rating.[1]  (Doc. No. 12-2 at 2.)

Thus, because the Commission classified the severity of Petitioner's offense as a Category Eight offense and assessed him with a salient factor score of eight (8), this resulted in a guidelines range of one-hundred (100) plus months (i.e., "100+") with no upper limit to be served before parole.  See 28 C.F.R. § 2.20 (July 1, 1995).  In this regard, the federal parole regulations specifically explain that, with respect to Category Eight offenses, "no upper limits are specified" because of "the extreme variability of the cases within this category."  See id. n.1. The federal parole regulations further explain that, "[f]or decisions exceeding the lower limit of the applicable guideline category by more than 48 months, the Commission will specify the

---

[1]  Petitioner does not dispute the Commission's classification of the severity of his offense or the Commission's assessment of his salient factor score.

pertinent case factors upon which it relied in reaching its decision[.]"  See id. (explaining that "[t]his procedure is intended to ensure that the prisoner understands that individualized consideration has been given to the facts of the case, and not to suggest that a grant of parole is to be presumed for any class of Category Eight offenders").  In Petitioner's case, the Commission stated as follows: "the decision more than 48 months above the lower end of the Category Eight range was merited because the victim was 7 months pregnant and premeditation was involved."  (Doc. No. 12-2 at 2.)  Thus, as a result of these findings, the Commission denied Petitioner parole at his initial hearing and ordered that he have a fifteen (15)-year reconsideration hearing in February of 2014.  (Id.)

Subsequently, in 2001, 2003, 2005, 2007, and 2012, the Commission held statutory interim hearings.  (Id.)  These interim hearings are required by 18 U.S.C. § 4208(h), and their purpose is "to consider any significant developments or changes in the prisoner's status that may have occurred subsequent to the initial hearing."  See Commission's Manual, 2.14, Subsequent Proceedings, available at https://www.justice.gov/d9/uspc/legacy/2010/08/27/uspc-manual111507.pdf.  Depending on the circumstances of the prisoner's case, these interim hearings held either every eighteen (18) or twenty-four (24) months.  See id.  Petitioner acknowledges that he was scheduled for interim hearings every twenty-four (24) months after he was denied parole at his initial hearing.  (Doc. No. 2 at 2, 3.)  Ultimately, however, after each of these interim hearings, the Commission ordered no change to the fifteen (15)-year reconsideration hearing that was previously scheduled for February of 2014.  (Doc. No. 12-2 at 2.)

Then, on March 2, 2013, before Petitioner could be reconsidered for parole at the fifteen (15)-year reconsideration hearing, he reached his two-thirds date as calculated by the BOP.  (Id.

at 2-3.)  Respondent notes that this two-thirds date entitled Petitioner to be heard under the

standards set forth in 18 U.S.C. § 4206(d) and 28 C.F.R. § 2.53(a).  (Doc. No. 12 at 4-5.)

Respondent also notes that the Commission used to refer to these types of hearings as

"'mandatory parole' hearings, but later changed the term to 'two-thirds' parole hearings [in

order] to avoid confusion because parole was not in fact mandatory."  (<u>Id.</u> at 5 n.3.)  Respondent

is correct in that 18 U.S.C. § 4206(d) does not automatically require a prisoner to be released

upon reaching his "two-thirds" date.  <u>See</u> 18 U.S.C. § 4206(d).  Rather, the statute provides as

follows:

> (d) Any prisoner, serving a sentence of five years or longer, who is not earlier
> released under this section or any other applicable provision of law, shall be
> released on parole after having served two-thirds of each consecutive term or
> terms, or after serving thirty years of each consecutive term or terms of more
> than forty-five years including any life term, whichever is earlier: <u>Provided,</u>
> <u>however,</u> [t]hat the Commission shall not release such prisoner if it determines
> that he has seriously or frequently violated institution rules and regulations or
> that there is a reasonable probability that he will commit any Federal, State, or
> local crime.

<u>See</u> <u>id.</u> (emphasis in original).

Some federal courts of appeals have discussed this statutory language and characterized it

as a rebuttable presumption in favor of parole.  <u>See, e.g.</u>, <u>Dufur v. United States Parole Comm'n</u>,

34 F.4th 1090, 1098 (D.C. Cir. 2022) (explaining that "[t]he Commission treats § 4206 as

creating a rebuttable presumption in favor of parole[,]" and that this presumption "is rebutted,

and the Commission 'shall not' release a prisoner otherwise eligible for parole under this

provision, if it finds either that he has 'seriously or frequently violated institution rules' or that

'there is a reasonable probability that he will commit any Federal, State, or local crime'"

(quoting 18 U.S.C. § 4206(d))); <u>Bowers v. Keller</u>, 651 F.3d 1277, 1279-80 (11th Cir. 2011)

(stating that there is a statutory presumption of release under 18 U.S.C. § 4206(d) unless the

Commission makes specific findings to overcome that presumption); <u>Bruscino v. True</u>, 708 F.

App'x 930, 935 (10th Cir. 2017) (unpublished) (explaining that "§ 4206(d) creates a rebuttable

presumption favoring release on parole, subject to the Commission's determination as to the

statutory factors precluding parole").

In Petitioner's case, the Commission conducted a two-thirds hearing on December 5,

2012, and denied Petitioner parole.  (Doc. No. 12-2 at 3.)  The Commission found that there was

a reasonable probability that Petitioner would commit a Federal, State, or local crime because he

"was not telling the truth about his involvement in the death of his wife."  (<u>Id.</u>)  More

specifically, the Commission stated as follows:

> He denied that she was planning to leave him[,] and he denied there were
> problems in the marriage. Evidence at trial revealed the subject planned her
> death and hid the body in his house for about two days before dumping it into a
> ditch.

(<u>Id.</u>)  The Commission also stated that "his failure to accept responsibility for the crime makes

him more likely to engage in further criminal conduct of a very serious nature."  (<u>Id.</u>)  In

addition, the Commission found that Petitioner had "violated the rules of institution as evidenced

by two [a]ssaults committed in 1984 while at the [United States Disciplinary Barracks]."  (<u>Id.</u>)

The Commission believed that these assaults further demonstrated his "continued propensity for

violent behavior."  (<u>Id.</u>)

Then, on December 2, 2014, the Commission conducted an interim hearing.  (<u>Id.</u>)  The

Commission ordered that there was no change in the previous decision to deny Petitioner parole

because there continued to be a reasonable probability that Petitioner would commit a Federal,

State, or local crime if released, but "this time on the basis of his refusal to make any comments

about his [crime]."  (<u>Id.</u>)  More specifically, the Commission sated as follows:

> It was noted, in previous hearings, [that] [Petitioner] denied any involvement in the killing of his wife but now was making no comment.  It was determined, because he takes no responsibility for his criminal conduct, which involved killing his 7 months pregnant wife, there continued to be a likelihood he will engage in criminal conduct if released.

(Id.)  In addition, the Commission continued to find that Petitioner "seriously violated the rules of the institution as evidenced by the two [a]ssaults in 1984."  (Id.)  The Commission explained that these assaults further "highlighted his propensity for violent behavior."  (Id.)  Although Petitioner appealed, the Commission's National Appeals Board ("Board") affirmed the Commission's decision on June 3, 2015, finding that Petitioner's claims on appeal were without merit.  (Id.)

Subsequently, on March 11, 2019, Petitioner reapplied for parole consideration.  (Id.)  The Commission held a two-thirds hearing on March 17, 2020.  (Id. at 5.)  The Commission denied Petitioner parole and stated that he would be scheduled for a statutory interim hearing in March of 2022.  (Id. at 9.)  In support of its denial, the Commission found that there continues to be a reasonable probability that Petitioner will commit a Federal, State, or local crime if he were to be released.  (Id.)  The Commission also found that Petitioner seriously violated "the rules of institution" as evidenced by his two (2) assaults in 1984 while in military custody and that these assaults only further demonstrate "[his] propensity for violent behavior."  (Id.)

Although Petitioner appealed this decision on April 23, 2020 (Doc. No. 12-5 at 2-10), the Board denied his appeal on June 18, 2020 (Doc. No. 12-6 at 2-3).  Thus, in March of 2022, Petitioner was eligible to be reconsidered for parole again.  (Doc. No. 12-2 at 9.)  As reflected by the record, however, Petitioner voluntarily waived that parole hearing.  (Doc. No. 12-7 at 2-3.)  Shortly before doing so, Petitioner filed the instant Section 2241 petition in this Court.  (Doc. No. 1.)  On March 4, 2022, the Court issued an Order deeming the petition filed and directing

service of the petition on the Respondent, the Warden at LSCI Allenwood, and on the United

States Attorney.  (Doc. No. 7.)

In that Order, the Court observed that Petitioner had not only named the Warden of LSCI

Allenwood, the Warden of the institution at which Petitioner is currently incarcerated, but also

the United States Parole Commissioner and "Ms. Cuswa[,] Commissioner" as Respondents in

this matter.  (Doc. No. 1 at 1.)  The Court explained, however, that in a habeas challenge, "the

proper respondent is the warden of the facility where the [individual] is being held."  See

Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004); Anariba v. Dir. Hudson Cty. Corr. Ctr., 17 F.4th

434, 444 (3d Cir. 2021) ("The logic of this rule rests in an understanding that the warden . . . has

day-to-day control over the prisoner and . . . can produce the actual body." (citation and internal

quotation marks omitted)).  Consequently, the Court directed the Clerk of Court to terminate Ms.

Cuswa and the U.S. Parole Commissioner as Respondents in this action and directed service of

the petition solely on the Warden at LSCI Allenwood.  (Doc. No. 7 at 1 n.1.)  Shortly thereafter,

Petitioner filed a motion for reconsideration, requesting that the Court reconsider its termination

of the U.S. Parole Commissioner and Ms. Cuswa as Respondents in this action.  (Doc. No. 9.)[2]

Following an extension of time (Doc. Nos. 10, 11), Respondent filed a response to the

petition on March 31, 2022 (Doc. No. 12).  Petitioner filed a reply to that response, as well as a

letter and a memorandum of law in support of his petition. (Doc. Nos. 13, 14, 15.)  Thus, the

petition, which has been briefed by the parties, is ripe for the Court's disposition.  For the

---

[2]  Petitioner did not file a brief in support of this motion as required by the Local Rules of Court.
See M.D. Pa. L.R. 7.5 (providing, in relevant part, that "[w]ithin fourteen (14) days after the
filing of any motion, the party filing the motion shall file a brief in support of the motion" and
that "[i]f a supporting brief is not filed within the time provided in this rule the motion shall be
deemed to be withdrawn").  Regardless, because the instant Section 2241 petition will be denied,
Petitioner's pending motion for reconsideration will also be denied as moot.

reasons set forth below, the Court will deny the instant petition and direct the Clerk of Court to close this case.[3]

## II.    DISCUSSION

In his Section 2241 petition, Petitioner claims that the Commission violated the Ex Post Facto Clause of the United States Constitution and abused its discretion.  (Doc. No. 1 at 7-8.)  As for relief, Petitioner seeks a Court Order directing the Commission to abide by their parole guidelines and to apply "any and all CFR [r]emedies [so] that Petitioner may receive an effective release date or, in the alternative, . . . an immediate release date."  (Doc. No. 1 at 9.)

### A.    Ex Post Facto Violation

The United States "Constitution prohibits both federal and state governments from enacting any 'ex post facto Law.'"  See Peugh v. United States, 569 U.S. 530, 538 (2013) (quoting Art. I, § 9, cl. 3; Art. I, § 10)).  An ex post facto law is one that "chang[es] the punishment, and inflic[ts] a greater punishment, than the law annexed to the crime, when committed."  See id. at 539 (citation and internal quotation marks omitted).  Therefore, the Ex Post Facto Clause prohibits "'enactments which, by retroactive operation, increase the punishment for a crime after its commission.'"  See United States v. Thompson, 825 F.3d 198, 205 (3d Cir. 2016) (quoting Garner v. Jones, 529 U.S. 244, 249 (2000)).

When "assessing whether a law violates the Ex Post Facto Clause, [courts] compare the punishment attached to the defendant's crime at the time of his offense with the punishment

---

[3]  On October 13, 2022, Petitioner filed in this Court a petition for a writ of mandamus directed to the United States Court of Appeals for the Third Circuit ("Third Circuit").  (Doc. No. 16.) The Court notes that Petitioner also filed a petition for a writ of mandamus in the Third Circuit. See In re: Pharaoh Nkosi, No. 22-2936 (3d Cir. filed Oct. 19, 2022).  Because this Court is without jurisdiction to address the pending petition for a writ of mandamus (Doc. No. 16), Petitioner may wish to supplement his Third Circuit filing as necessary.

retroactively attached to the defendant's crime after the enactment of the alleged <u>ex</u> <u>post</u> <u>facto</u> law." <u>See</u> <u>id.</u> (underline added).  If a court determines that "the retroactive 'change in law presents a sufficient risk of increasing the measure of punishment attached to the covered crimes,' then it violates the <u>Ex</u> <u>Post</u> <u>Facto</u> Clause." <u>See</u> <u>id.</u> (underline added) (citations and internal quotation marks omitted); <u>Garner</u>, 529 U.S. at 255 (explaining that an <u>ex</u> <u>post</u> <u>facto</u> law is one that creates "a significant risk of increasing [the defendant's] punishment").

Here, Petitioner appears to claim that the Commission has applied the wrong parole guidelines to his case from February 1, 1999, when he had his initial parole hearing, to the present day, in violation of the <u>Ex</u> <u>Post</u> <u>Facto</u> Clause of the United States Constitution.  (Doc. No. 1 at 7; Doc. No. 2 at 5.)  In support, Petitioner alleges that he was under the age of twenty-two (22) years old at the time of his crime and, thus, is entitled to the application of the "Youth/NARA" guidelines set forth 28 C.F.R. § 2.20(h) (1981).[4]  (Doc. No. 1 at 8; Doc. No. 13 at 2.)  In further support, Petitioner attaches a copy of the relevant portion of this regulation to his Section 2241 petition.  (Doc. No. 1-7.)  That portion states as follows:

> (h)(1) The Adult Guidelines shall apply to all offenders except as specified in paragraph (h)(2) of this section.
>
> (2) The Youth/NARA Guidelines will apply to any offender sentenced under the Youth Corrections Act, the Narcotic Rehabilitation Act, or the Juvenile Justice Act, and to any other offender who was less than 22 years of age at the time the current offense was committed, regardless of sentence type[.]"

(<u>Id.</u> at 3.)

Petitioner asserts, however, that the Commission did not apply these guidelines and, instead, applied the "Adult Guidelines" retroactively to his case.  (Doc. No. 2 at 5, 6.)  Petitioner

---

[4]  For ease of reference, the Court will refer to these "Youth/NARA Guidelines" as the "youth guidelines."

further asserts that he was disadvantaged by this retroactive application.  (Id.)  In support of his view that he was disadvantaged, Petitioner raises the following two (2) contentions: (1) under the youth guidelines, he was required to have a parole hearing every twelve (12) months and not every twenty-four (24) months, as occurred in his case (id. at 3, 6); and (2) also under the youth guidelines, his institutional infractions would have been viewed "more leniently" (id. at 7).

Respondent acknowledges that there were changes to 28 C.F.R. § 2.20 on October 3, 1985 (Doc. No. 12 at 7), after Petitioner had committed his underlying offense on June 13, 1981 (Doc. No. 12-2 at 2).  Respondent further acknowledges that the pertinent change to 28 C.F.R. § 2.20, which is applicable here, was the merging of the youth guidelines and the adult guidelines into a single guideline scheme by eliminating the provision contained in 28 C.F.R. § 2.20(h)(2), which—as set forth above—provided for offenders who were twenty-two (22) years of age or under at the time of their offenses to be considered under the youth guidelines. (Doc. No. 12 at 7 n.5.)

Nevertheless, Respondent argues that Petitioner has not shown that the Commission violated the Ex Post Facto Clause when it failed to apply the youth guidelines to Petitioner's case.  (Id. at 11-13.)  In support, Respondent argues, among other things, that because the parole guidelines under both the youth guidelines and adult guidelines did not provide for a specific upper limit as to the amount of prison time to be served before parole, Petitioner cannot show an ex post facto violation.  (Id. at 13.)  The Court agrees.

At the time Petitioner committed his offense, the youth guidelines rated the severity of an offender's behavior pursuant to the following categories: Low; Low Moderate; Moderate; High;

Very High; Greatest I; and Greatest II.  <u>See</u> 28 C.F.R. § 2.20 (Nov. 1, 1981).[5]  The youth

guidelines identified "[m]urder" as an example of an offense that would have been classified

under the Greatest II Category.  (<u>Id.</u> (identifying other examples of Greatest II Category offenses

such as, voluntary manslaughter, aggravated felony, kidnapping, etc.).)  "Murder" is most

analogous to Petitioner's underlying offense of premeditated murder, and Petitioner has not

argued otherwise.  Thus, the severity of Petitioner's premeditated murder offense would have

been classified under the Greatest II Category in the youth guidelines.  Because of this, there

would have been no upper limit in the guideline range for Petitioner's offense because the youth

guidelines expressly stated as follows: "[s]pecific upper limits are not provided due to the limited

number of cases and the extreme variation possible within [the Greatest II] category."  (<u>Id.</u>)

     Similarly, at the time Petitioner committed his offense, the adult guidelines rated an

offender's behavior pursuant to the same seven (7) categories as the youth guidelines—<u>i.e.</u>, Low,

Low Moderate, Moderate, High, Very High, Greatest I, and Greatest II.  (<u>Id.</u>)  The adult

guidelines also identified "[m]urder" as an example of an offense that would have been classified

under the Greatest II Category.  (<u>Id.</u>)  Thus, much like the youth guidelines, Petitioner's offense

of premeditated murder would have also been classified under the Greatest II Category in the

adult guidelines.  In addition, the adult guidelines—and again—much like the youth guidelines,

expressly stated as follows: "[s]pecific upper limits are not provided due to the limited number of

cases and the extreme variation possible within [the Greatest II] category."  (<u>Id.</u>)

     In other words, regardless of whether the Commission would have considered

Petitioner's offense under the 1981 youth guidelines or adult guidelines, there would have been

---

[5]  This regulation is available at
https://heinonline.org/HOL/Page?handle=hein.cfr/cfr1981089&id=1&collection=cfr&index=.

no distinction.  Both sets of guidelines expressly stated that "[s]pecific upper limits" were not provided for offenses falling within the Greatest II Category, including the offense of "[m]urder."  (Id. (explaining that offenses within the Greatest II Category have no "[s]pecific upper limits" because of the "limited number of cases and the extreme variation possible within [this] category").)

Moreover, when revisions were made to the parole guidelines the following year in 1982 (effective January 31, 1983), the Commission revised its offense severity ratings.  See 28 C.F.R. § 2.20 (Dec. 16, 1982).[6]  More specifically, the Greatest II Category offenses were replaced with two (2), new ratings—namely, Category Seven and Category Eight ratings.  As discussed above, a Category Eight rating is applied to the most serious offenses, including homicide offenses such as "[m]urder[,]" and, thus, Petitioner's underlying offense of premeditated murder would have been classified under this Category Eight rating.  See id.

Significantly, under this Category Eight rating in the 1982 guidelines, Petitioner's offense when considered under either the youth guidelines or the adult guidelines would have had no upper limit in the guideline ranges, just like the Greatest II Category rating in the 1981 guidelines.  Compare id. (providing no upper limit for Category Eight offenses such as "[m]urder") with 28 C.F.R. § 2.20 (Nov. 1, 1981) (providing no upper limit for Greatest II Category offenses, such as "[m]urder").  Thus, on October 3, 1985, when the Commission consolidated the youth guidelines and the adult guidelines into a single guideline scheme and eliminated 28 C.F.R. § 2.20(h)(2), the upper limit to the guideline range for Petitioner's offense

---

[6]  This regulation is available at https://www.govinfo.gov/content/pkg/FR-1982-12-16/pdf/FR-1982-12-16.pdf.

did not change because Category Eight offenses in the 1985 guidelines **still** contained no upper limit.  See 28 C.F.R. § 2.20 (Oct. 3, 1985).[7]

Accordingly, even though there was a retroactive change in the guidelines on October 3, 1985, the Court does not perceive this retroactive change as presenting any risk, much less a significant risk, of increasing the measure of punishment attached to Petitioner's offense of premeditated murder.  See Garner, 529 U.S. at 255 (explaining that an ex post facto law is one that creates "a significant risk of increasing [the defendant's] punishment"); Thompson, 825 F.3d at 205 (explaining that "[i]f the retroactive change in law presents a sufficient risk of increasing the measure of punishment attached to the covered crimes," then it constitutes an ex post facto violation (citations and internal quotation marks omitted)).  In other words, the Court finds that the retroactive change in the parole guidelines did not, in any way, enhance Petitioner's prison sentence beyond that which was authorized by the parole guidelines at the time of his offense.

Thus, although Petitioner argues—for the first time in his reply brief—that the Commission's failure to apply 28 C.F.R. § 2.20 (Nov. 1, 1981) to his case increased his sentence by one-hundred and eight (108) months (Doc. No. 13 at 6),[8] the Court fails to see the merit of this argument.  Regardless of whether the Commission would have considered Petitioner's offense under the 1981 youth guidelines or the 1995 guidelines, there would have been no difference.  Both sets of guidelines expressly stated that upper limits were not provided for the

---

[7]  This regulation is available at https://www.govinfo.gov/content/pkg/FR-1985-10-03/pdf/FR-1985-10-03.pdf.

[8]  Petitioner appears to be calculating the difference in the lower limits of the guideline ranges in 1981 youth guidelines and the 1995 adult guidelines, which accounts for a total difference of "60+ months[,]" and to also be adding "another 48 months . . . of the lower limits" in the 1995 adult guidelines, which, Petitioner argues, amounts to "a total increase of 108+ months[.]"  (Doc. No. 13 at 5.)

offense categories relating to Petitioner's underlying offense of premeditated murder.  Thus, the decision by the Commission that Petitioner serve up to the expiration of his sentence would be a decision within the broad latitude of both sets of guidelines.  See Madonna v. U.S. Parole Comm., 900 F.2d 24, 26 (3d Cir. 1990) (explaining that, unlike other less serious offenses, which are either "bounded from above and below or bounded only from above[,]" there is "no upper limit" for Category Eight guideline ranges (footnotes omitted)).  Furthermore, just because the Commission explained its decision to set a release date for Petitioner "more than 48 months above the lower end of the Category Eight range" (Doc. No. 12-2 at 2), this does not change the fact that the Commission's decision was **still** within the Category Eight guideline ranges.  See Madonna, 900 F.2d at 26 (explaining that no upper limit exists for Category Eight guideline ranges (i.e., "100+") and further explaining that the parole regulation requiring the Commission to explain its decisions that exceed the minimum guideline range by forty-eight (48) months, i.e., 28 C.F.R. § 2.20 n.1, does not imply an upper limit of one-hundred and forty-eight (148) months).

Finally, the Court finds that Petitioner's remaining assertions—that the youth guidelines would have afforded him more frequent parole hearings and that the Commission would have viewed his two (2) prior assaults more leniently if the Commission would have considered him under those guidelines—do not guarantee that Petitioner would have been granted early release on parole.  Indeed, the Court finds that these assertions are speculative, at best.   Thus, for all of these reasons, the Court finds that Petitioner's ex post facto claim is without merit.  The Court will, therefore, deny Petitioner habeas relief with respect to this claim.

### B.    Abuse of Discretion

While federal judicial review of the Commission's parole decisions is available in a habeas corpus action, courts must "accord great deference to the Commission as the factfinder in the first instance and as the decisionmaker whom 'Congress has decided . . . is in the best position to determine when release is appropriate.'"  See Dufur, 34 F.4th at 1099 (quoting United States v. Addonizio, 442 U.S. 178, 189 (1979)); 28 C.F.R. § 2.18 (providing that "[t]he granting of parole to an eligible prisoner rests in the discretion of the U.S. Parole Commission").  For that reason, "[t]he appropriate standard of review of the Commission's findings of fact is not whether the [Commission's decision] is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the [Commission's] conclusions embodied in its statement of reasons."  See Furnari v. Warden, Allenwood Fed. Corr. Inst., 218 F.3d 250, 254 (3d Cir. 2000).  Accordingly, courts "should review . . . whether the Commission 'has followed criteria appropriate, rational and consistent' with its enabling statutes so that its 'decision is not arbitrary and capricious, nor based on impermissible considerations.'"  See id. (quoting Zannino v. Arnold, 531 F.2d 687, 690 (3d Cir. 1976)).

In this case, Petitioner appears to be arguing that the Commission has been abusing its discretion since his initial parole hearing in 1999 because the Commission has not been considering him under the youth guidelines that were in effect in 1981.  (Doc. No. 1 at 8; Doc. No. 2 at 8.)  In support, Petitioner alleges that the Commission explained to him that he was not entitled to application of the youth guidelines because he was a military inmate convicted at a general court-martial and that in order for him to have been eligible for application of the youth guidelines, he was required to have been sentenced under 18 U.S.C. § 5010, the Youth

16

Corrections Act.  (Id. at 9.)  That Act, which was enacted in 1950 and repealed in 1984, was "designed to provide a better method for treating young offenders convicted in federal courts in that vulnerable age bracket[, i.e., sixteen (16) to twenty-two (22) years of age], to rehabilitate them and restore normal behavior patterns."  See Dorszynski v. United States, 418 U.S. 424, 433 (1974) (citing H.R.Rep.No.2979, 81st Cong., 2d Sess., 2-3 (1950)); see also Federal Youth Corrections Act, ch. 1115, 64 Stat. 1085 (1950) (codified at 18 U.S.C. §§ 5005-5056 (1976) (repealed in 1984)).

Petitioner seems to contend, however, that the Commission's explanation that the Youth Corrections Act is inapplicable to his case is misplaced.  (Doc. No. 13 at 2.)  In support, he argues that, at the time of his underlying offense, which was committed on June 13, 1981,[9] the youth guidelines were in effect and applied to him because he was under the age of twenty-two (22) on the date of the offense.  (Id. at 10.)  Thus, Petitioner reiterates his arguments concerning the Ex Post Facto Clause of the United States Constitution and argues that the Commission has also abused its discretion.  (Id. at 10-11.)

In response, Respondent echoes the Commission's finding that the Youth Corrections Act does not apply to Petitioner's case because, as explained by the Commission, Petitioner was convicted at an Air Force Court-Martial for violating Article 118 of the Uniform Code of Military Justice.  (Doc. No. 12 at 9.)  Respondent thus contends that the Commission was not commanded by statute to apply any "youth guidelines" to Petitioner's case because he was not sentenced pursuant to the Youth Corrections Act.  (Id. at 9-10.)

---

[9]  In passing, Petitioner maintains his innocence.  (Doc. No. 13 at 8.)  For the sake of argument, however, he appears to accept June 13, 1981, as the date on which the underlying offense was committed.

17

In his reply brief, however, Petitioner adamantly contends that he is not requesting the

Commission to consider him under the Youth Corrections Act. (Doc. No. 13 at 2.) He

acknowledges that this Act does not apply to his case and argues "only" that 28 C.F.R. § 2.20(h)

(1981) applies to his case. Thus, it does not appear to the Court that the applicability of the

Youth Corrections Act is actually in dispute in this case. In addition, the Court notes the plain

language of 28 C.F.R. § 2.20(h) (Nov. 1, 1981), which provides, in relevant part, as follows:

"The Youth/NARA Guidelines will apply to any offender sentenced under the Youth Corrections

Act, the Narcotic Rehabilitation Act, or the Juvenile Justice Act, **and to any other offender who**

**was less than 22 years of age at the time the current offense was committed**, regardless of

sentence type[.]" See 28 C.F.R. § 2.20(h) (Nov. 1, 1981) (emphasis added). Accordingly,

Petitioner's contention is well-taken, and the Court will proceed by addressing Respondent's

remaining arguments.

More specifically, Respondent argues that, once a federal inmate reaches his two-thirds

date, the Commission considers the prisoner for parole using only the criteria set forth in 18

U.S.C. § 4206(d). (Doc. No. 12 at 14.) In other words, Respondent argues, the Commission

does not utilize the guidelines set forth in 28 C.F.R. § 2.20 to make a parole determination for a

prisoner who has served thirty (30) years or more of a sentence greater than forty-five (45) years,

including life sentences. (Id. (citing 28 C.F.R. § 2.53(a); 18 U.S.C. § 4206(d)); id. at 15 (noting

that Congress passed 18 U.S.C. § 4206(d) on March 15, 1976, and thus, this statute was

applicable to Petitioner when he committed his underlying offense in 1981).) Accordingly,

Respondent argues that Petitioner cannot show that he was prejudiced by the Commission's

failure to consider him under the youth guidelines because Petitioner has been considered under

the more favorable standard set forth in 18 U.S.C. § 4206(d) since reaching his two-thirds date.

The Court agrees.  The Court also finds that the Commission had a rational basis for its decisions prior to Petitioner reaching his two-thirds date.

When Petitioner was transferred to BOP custody in 1998 and considered for parole at his initial parole hearing on February 1,1999, the Commission classified Petitioner's crime as a Category Eight offense. (Doc. No. 12-2 at 2.)  As discussed above, Category Eight offenses include the most serious offenses, such as "[m]urder . . . resulting in the death of a person other than a participating offender[.]"  See 28 C.F.R. § 2.20 (July 1, 1995).  Additionally, because the Commission classified Petitioner's offense as a Category Eight offense, and because the Commission assessed Petitioner with a salient factor score of eight (8), this resulted in a guidelines range of one-hundred (100) plus months (i.e., "100+") with no upper limit to be served before parole.  See id.; id. n.1 (explaining that, for Category Eight offenses, "no upper limits are specified due to the extreme variability of the cases within this category").  Thus, for all of these reasons, the Court finds that the Commission had a rational basis for its decision to deny Petitioner parole at his initial hearing and to order that he have a fifteen (15)-year reconsideration hearing in February of 2014.

Moreover, once Petitioner subsequently reached his two-thirds date on March 2, 2013 (prior to the fifteen (15)-year reconsideration in February of 2014), the Commission considered Petitioner for parole pursuant to 18 U.S.C. § 4206(d) and 28 C.F.R. § 2.53(a) on December 5, 2012, December 2, 2014, and March 17, 2020.  (Doc. No. 12-2 at 2, 3, 5, 8, 9.)  Ultimately, the Commission denied Petitioner parole at each of these hearings.  (Id.)  In support of its denials, the Commission found a reasonable probability that Petitioner would commit a Federal, State, or local crime if he were to be released since he did not take responsibility for his criminal conduct. (Id.)  The Commission also found that Petitioner seriously violated institutional rules as

19

evidenced by the two (2) assaults he committed in 1984 at the disciplinary barracks.  (Id.)  As

discussed above, the Commission was expressly permitted by statute to make these

determinations.  See 18 U.S.C. § 4206(d).  Moreover, Petitioner has not argued that the

Commission improperly relied on the severity of his offense or the two (2) assaults that he

committed in 1984.  Thus, for all of these reasons, the Court finds that the Commission had a

rational basis for its decision to deny Petitioner parole at his parole hearings.[10]

Finally, the Court observes that, for the first time in his reply brief, Petitioner claims that

the Commission's failure to apply the youth guidelines to his case constitutes a due process

violation.  (Doc. No. 13 at 9.)  However, in support of this claim, Petitioner raises the same

arguments that he raises in support of his abuse-of-discretion claim.  (Id.)   Thus, the Court will

address Petitioner's due process claim here.

Although "[t]here is no constitutional or inherent right of a convicted person to be

conditionally released before the expiration of a valid sentence[,]" see Greenholtz v. Inmates of

Nebraska Penal & Corr. Complex, 442 U.S. 1, 7 (1979), "prisoners have a liberty interest

flowing directly from the due process clause in not being denied parole for arbitrary or

constitutionally impermissible reasons."  See Block v. Potter, 631 F.2d 233, 236 (3d Cir. 1980).

"The relevant level of arbitrariness required in order to find a substantive due process violation

involves not merely action that is unreasonable, but, rather, something more egregious, which

[has been] termed at times 'conscience shocking' or 'deliberately indifferent.'"  Hunterson v.

---

[10]  Notably, it is unclear to the Court how Petitioner has been prejudiced by the alleged failure of
the Commission to consider him under the youth guidelines since Petitioner has been considered
under the more favorable standard set forth in 18 U.S.C. § 4206(d), which—as discussed
above—creates a rebuttable presumption in favor of parole.

DiSabato, 308 F.3d 236, 246-47 (3d Cir. 2002).  Thus, "the requirements of substantive due process are met if there is some basis for the challenged decision."  See id. at 246.

Here, the Court finds that the Commission's alleged failure to apply the youth guidelines to Petitioner's case did not involve any amount of arbitrariness or constitutional impermissibility, as necessary for Petitioner to show a substantive due process violation.  Rather, and as discussed above, the Commission had a rational basis for its decisions when considering Petitioner for parole at his initial hearing and at his subsequent parole hearings.  The Court affords the Commission broad discretion in making these decisions.  See Dufur, 34 F.4th at 1099; 28 C.F.R. § 2.18.

Thus, for all of these reasons, the Court finds that Petitioner's due process claim is also without merit.  See Hunterson, 308 F.3d at 246 (stating that "the federal courts, on habeas review, are not to 'second-guess parole boards,' and the requirements of substantive due process are met if there is some basis for the challenged decision" (quoting Coady v. Vaughn, 251 F.3d 480, 487 (3d Cir. 2001)).[11]

---

[11]  Given the foregoing conclusions, the Court need not reach the additional argument raised by Respondent—i.e., that the Commission's guidelines do not constitute "laws" for purposes of an Ex Post Facto analysis.  (Doc. No. 12 at 7-9).  Further, the precedent of the Third Circuit holds that the Commission's parole guidelines are considered "laws" for purposes of an Ex Post Facto analysis if they are administered without "substantial flexibility."  See United States ex rel. Forman v. McCall, 709 F.2d 852, 862 (3d Cir. 1983); Hill v. Lamanna, 264 F. App'x 225, 226-27 (3d Cir. 2008) (unpublished); Keitt v. U.S. Parole Comm'n, 238 F. App'x 755, 759 (3d Cir. 2007) (unpublished).  Here, however, Respondent presents no allegations or evidence regarding the degree of flexibility with which the Commission's guidelines are being applied.  See, e.g., United States ex rel. Forman v. McCall, 776 F.2d 1156, 1163 (3d Cir. 1985) (concluding that a twenty-five percent (25%) deviation from the Commission's prescribed guideline ranges was "strong evidence" of "substantial flexibility" in the application of the parole guidelines and, thus, the guidelines did not constitute "laws" for purposes of the Ex Post Facto Clause).  Thus, the Court not only need not reach this argument, but in addition, this complex and fact-intensive inquiry is not properly before the Court.

**III.    CONCLUSION**

Accordingly, for all of the foregoing reasons, the Court will deny Petitioner's Section 2241 petition for habeas corpus relief.  An appropriate Order follows.